UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NELSON LAC,<br><br>    Plaintiff,<br><br>    v.<br><br>NATIONSTAR MORTGAGE LLC,<br>DOES 1–10,<br><br>    Defendants. | No. 2:15-cv-00523-KJM-AC (TEMP)<br><br>ORDER |

Nelson Lac alleges Nationstar Mortgage LLC is attempting to conduct a foreclosure sale of his Sacramento, California home without first following the requirements of California law.  He also alleges Nationstar made misrepresentations and engaged in unfair business practices.  The matter is now before the court on his motion for a preliminary injunction.  The court held a hearing on April 22, 2016.  Aldon Bolanos appeared for Lac and Jered Ede appeared for Nationstar.  The motion is denied.

I.  BACKGROUND

In 2006, Lac obtained a mortgage loan with a principal amount of $480,000, secured by a deed of trust recorded against his home on Citrus Avenue in Sacramento, California.

/////

/////

Request for Judicial Notice (RJN) Ex. L, ECF No. 67.[1]  In 2008, Lac's construction business closed, and he fell behind on his mortgage payments.  Lac Decl. ¶ 3, ECF No. 56-2.  In November 2010, a notice of default was recorded, RJN Ex. M, and a few months later, a notice of a trustee's sale was recorded.  *Id.* Ex. N.  For reasons not disclosed by the record here, the sale did not go forward.

Nationstar began servicing Lac's loan in July 2013 and is the loan's current servicer.  *See* Janati Decl. ¶¶ 2, 5, ECF No. 66-1.  On July 1, 2014, Lac's attorney, Aldon Bolanos, sent Nationstar a letter requesting Nationstar consider a loan modification.  Bolanos Decl. Ex. 1, at 3, ECF No. 56-4.  Bolanos sent Nationstar another letter on July 14, 2014, expressing frustration that in the previous weeks, Nationstar had not forwarded information about how to apply for a loan modification.  *Id.* Ex. 1, at 4.  Nationstar responded on July 18, 2014 and acknowledged Bolanos's concerns.  *Id.* Ex. 1, at 5.  It expected to send a response within a few weeks.  *See id.*

On July 31, Nationstar sent Bolanos a letter apologizing that it had forgotten to forward an application for a loan modification as he had previously requested.  Janati Decl. Ex. A.  Nationstar invited Lac to apply for payment assistance options, enclosed a package for Lac to fill out, and gave Bolanos instructions about how to respond.  *Id.*  Nationstar confirmed the loan was more than thirty payments overdue and gave Bolanos the phone number for William Kaja, identified as Lac's single point of contact with Nationstar.  *Id.*  Nationstar had also identified Kaja as Lac's single point of contact in June 2014.  *See* Bolanos Decl. Ex. 1, at 2.  After sending its July 31, 2014 letter, Nationstar received no response from Bolanos or Lac.  Janati Decl. ¶ 9.  Neither did Bolanos or Lac submit an application for a loan modification.  *Id.*

On October 9, 2014, Karleton Chester signed a declaration on behalf of Nationstar, confirming Nationstar had "tried with due diligence to contact the borrower [Lac] as required by

---

[1] The court grants Nationstar's request for judicial notice of this document and the other matters of public record cited in this order.  *See* Fed. R. Evid. 201 (governing judicial notice); *Grant v. Aurora Loan Servs., Inc.*, 736 F. Supp. 2d 1257, 1264 (C.D. Cal. 2010) (collecting authority supporting judicial notice of a deed of trust and similar recorded documents).

California Civil Code § 2923.55(f), but [had] not made contact despite such due diligence." Bolanos Decl. Ex. 2, at 2; RJN Ex. J, at 5. Chester certified that thirty days or more had passed since Nationstar made these attempts. Bolanos Decl. Ex. 2, at 2; RJN Ex. J, at 5.

On October 21, 2014, Bolanos sent Nationstar another letter. Bolanos Decl. Ex. 1, at 6. He asserted Nationstar had not responded to his request for a loan modification and instead had initiated foreclosure proceedings. *Id.* Nationstar wrote back on October 28, 2014. Janati Decl. Ex. B. It explained that it had in fact responded to Bolanos's requests and had sent a package for Lac to fill out and return. *Id.* Nationstar forwarded the package it had sent before, invited Lac to apply for payment assistance, and gave him the name and phone number of Jeremy Leicester, whom it assigned to be Lac's single point of contact. *Id.* Bolanos and Lac again did not respond. Janati Decl. ¶ 12. On December 22, 2014, a notice of default was recorded for Lac's loan, Bolanos Decl. Ex. 2, at 3; RJN Ex. J, but was then rescinded in June 2015, RJN Ex. K.

In late December 2014, Nationstar sent Bolanos a notice that Lac's account was more than 1,000 days overdue and more than $127,000 in arrears. Janati Decl. Ex. C. It sent similar letters the next January, *id.* Ex. D, and February, *id.* Ex. E. Bolanos and Lac did not respond. Janati Decl. ¶ 14. In November 2014, Nationstar also sent Bolanos contact information for Andrew Harrison, who had been designated as another of Lac's single point of contact. *Id.* Ex. H. Similarly, in February 2015, Nationstar told Bolanos Kristy Sonomura had been designated as Lac's single point of contact. *Id.* Ex. I. No evidence suggests Lac or Bolanos made contact with any of the four people Nationstar designated as Lac's single point of contact after Bolanos's initial letters in July 2014.

Lac filed a complaint in this court on March 9, 2015, represented by Bolanos. ECF No. 1. His complaint alleges Nationstar ignored the letters Bolanos sent in July and October 2014. *Id.* ¶¶ 3–6. He also alleges Nationstar falsely claimed to have tried diligently to contact him before a notice of default was recorded in December 2014. *Id.* ¶ 7. Lac asserts claims for (1) wrongful foreclosure, *see id.* ¶¶ 3–11 (citing Cal. Civ. Code § 2923.55 and *Intengan v. BAC Home Loans Servicing LP*, 214 Cal. App. 4th 1047, 1057 (2013)); (2) negligent

3

1  misrepresentation, *id.* ¶¶ 14–15; and (3) unfair business practices under the California Unfair
2  Competition Law (UCL), Cal. Bus. & Prof. Code §§ 17200 *et seq.*, *id.* ¶¶ 16–18.  He requests
3  damages, declaratory relief, an equitable accounting, interest, attorneys' fees, and costs.
4  *Id.* at 7–8.

5        Nationstar's responsive pleading was due September 9, 2015, but nothing was
6  filed by that date.  On September 17, 2015, Lac filed a motion for the entry of Nationstar's
7  default.  ECF No. 12.  Three days later, Lac filed an *ex parte* application for a temporary
8  restraining order, notifying the court a foreclosure sale had been scheduled for mid-October.
9  TRO App. 3, ECF No. 13.  The court set a hearing on the motion and instructed Bolanos to
10  contact Nationstar and notify it of Lac's application and the hearing.  ECF No. 15.  Bolanos
11  complied with that order.  ECF No. 16.

12        In October 2015, Nationstar appeared in this action by filing a belated motion to
13  dismiss.  ECF No. 17.  A few days later, the court held a hearing on Lac's ex parte application.
14  Minutes, ECF No. 23.  Following a discussion with counsel, the court issued an order granting the
15  application for a temporary restraining order as unopposed and enjoining any foreclosure sale for
16  sixty days.  Order Oct. 14, 2015, ECF No. 24.  The court also struck Nationstar's untimely
17  motion to dismiss and instructed the Clerk's Office to enter Nationstar's default, which it had not
18  previously.  ECF No. 30.

19        On November 18, 2015, Nationstar sent Lac a notice that it had postponed the
20  foreclosure sale to December 22, 2015.  Bolanos Reply Decl. Ex. 4, at 2, ECF No. 73-1.
21  Nationstar began reviewing Lac's application for a loan modification on November 30, 2015.
22  Janati Decl. ¶ 18.  On December 3, 2015, Bolanos sent an email from Walter Dauterman, who
23  represented Lac temporarily during Bolanos's suspension from practice in late 2015 and early
24  2016, expressing his hope that Lac's application for a loan modification was complete now that
25  Lac had submitted a profit and loss statement for the previous two years.  Bolanos Reply Decl.
26  Ex. 3, at 3.

27        On February 3, 2016, Nationstar sent Lac a notice that the foreclosure sale had
28  been postponed to March 8, 2016.  Ex Parte Appl. Ex. 1, ECF No. 49-2.  On March 2, 2016, Lac

4

moved again *ex parte* for a temporary restraining order extending the injunction on the sale of his home, attaching the notice of the March 8, 2016 sale. ECF No. 49. In opposition, Nationstar's counsel, Chris Chapman, averred the sale had been postponed until May 10, 2016, ECF No. 52, so the court again granted the motion as unopposed and enjoined any sale before that date. ECF No. 54.

During this same time period, Chapman sent Bolanos an email to say Lac's application for a loan modification was incomplete because it was missing a profit and loss statement. Bolanos Reply Decl. Ex. 3, at 4. And the next day, Chapman sent Bolanos an email explaining that Nationstar preferred postponing the foreclosure sale to canceling it because cancelation is more expensive and time-consuming. *Id.* Ex. 4, at 5. Bolanos forwarded application materials on March 17, 2016. *Id.* Ex. 3, at 5.

In the meantime, Nationstar moved to set aside the entry of its default. ECF No. 47. It explained that it had not referred this case to local counsel, as is its normal practice, because the complaint was served on its Texas office rather than its California office. *Id.* at 2–3; Bruner Decl. ¶¶ 3–5, ECF No. 47-1. Nationstar's motion was granted, and its default was set aside. ECF No. 61. It then moved to dismiss Lac's claims, ECF No. 62, and that motion remains pending.

Lac now moves for a preliminary injunction to bar any foreclosure sale while this lawsuit is pending. ECF No. 56. Nationstar opposes the motion, arguing primarily that Lac is unlikely to succeed on the merits of his claims. ECF No. 66. Lac replied. ECF No. 72.

Nationstar emphasizes that notwithstanding the history of postponed and re-noticed sales in this case, no sale is currently scheduled or pending, and Nationstar is reviewing whether Lac qualifies for a loan modification. Janati Decl. ¶¶ 6, 18. At hearing, Nationstar's counsel clarified that Nationstar considers Lac's current application for a loan modification to be incomplete, but that it remains receptive to a completed application. Nationstar's counsel also confirmed that no foreclosure sale is scheduled, but that the notice of sale has not been rescinded, and it believes it is under no obligation to rescind the notice. Nationstar could offer no additional assurances that a foreclosure sale not would be calendared again soon.

After hearing the parties' arguments at hearing, the court referred the case to a mandatory settlement conference before a Magistrate Judge of this court. ECF No. 77–78. The settlement conference went forward on May 23, 2016, but the case did not settle. ECF No. 81.

II.     LEGAL STANDARD

A preliminary injunction preserves the relative position of the parties until a trial is completed on the merits or the case is otherwise concluded. *See Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). It is an extraordinary remedy awarded only upon a clear showing that the plaintiff is entitled to relief. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). The plaintiff must show he is "likely to succeed on the merits," "likely to suffer irreparable harm in the absence of the preliminary relief," "the balance of equities tips in his favor," and "an injunction is in the public interest." *Id.* at 20. Alternatively, if a plaintiff cannot demonstrate he is likely to succeed on the merits of his claims, but can show at least (1) that "serious questions" go to the merits of his claims, (2) that the "balance of hardships tips *sharply*" in his favor, and (3) that the other two parts of the *Winter* test are satisfied, then a preliminary injunction may be proper nonetheless. *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011)) (emphasis in *Shell*).

But if the plaintiff cannot show she has even a "fair chance of success on the merits," then it does not matter how the other parts of the *Winter* test may be resolved; "at an irreducible minimum the moving party must demonstrate a fair chance of success on the merits, or questions serious enough to require litigation." *Pimentel v. Dreyfus*, 670 F.3d 1096, 1111 (9th Cir. 2012) (quoting *Guzman v. Shewry*, 552 F.3d 941, 948 (9th Cir. 2009)) (internal quotation marks omitted).

When deciding whether to issue a preliminary injunction, the court may rely on declarations, affidavits, and exhibits, among other things, and this evidence need not conform to the standards that apply at summary judgment or trial. *Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009); *see also Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984) ("The trial court may give even inadmissible evidence some weight, when to do so serves the

6

purpose of preventing irreparable harm before trial"); *Rubin* ex rel. *N.L.R.B. v. Vista Del Sol Health Servs., Inc.*, 80 F. Supp. 3d 1058, 1072 (C.D. Cal. 2015) ("It is well established that trial courts can consider otherwise inadmissible evidence in deciding whether or not to issue a preliminary injunction."). "A credibility determination is well within the court's province when ruling on a preliminary injunction motion . . . ." *N.E. England Braiding Co. v. A.W. Chesterton Co.*, 970 F.2d 878, 884 (Fed. Cir. 1992); *accord Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc.*, 762 F.2d 1374, 1377 (9th Cir. 1985); 11A Charles A. Wright, et al., Federal Practice & Procedure § 2949 (3d ed. 2013).

III.     DISCUSSION

        The court begins by considering whether Lac is likely to succeed on the merits of his claims: wrongful foreclosure, negligent misrepresentation, and unfair business practices.

        First, Lac alleges Nationstar violated California Civil Code section 2923.55, which provides, among other things, that "[a] mortgage servicer shall contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." Cal. Civ. Code § 2923.55(b)(2). Lac alleges Nationstar ignored Bolanos's requests for Lac to be considered for a loan modification. *See* Compl. ¶ 10. He also alleges Nationstar assigned him "multiple and divergent" points of contact rather than one single point of contact. *See id.* ¶ 11. Although Lac cites section 2923.55 to support this claim, he appears to rely instead on section 2923.7, which provides that "[u]pon request from a borrower who requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact." Cal. Civ. Code § 2923.7(a).

        Lac has not demonstrated that he will support his first claim with evidence. Rather than ignoring Bolanos's letters, the evidence here suggests Nationstar responded to correspondence within a reasonable time. Bolanos asked Nationstar to consider Lac's application for a loan modification in July 2014; Nationstar responded and forwarded an application packet. Nationstar received no response. When Bolanos wrote again in October 2014, Nationstar again forwarded him an application packet, but received no response. Lac's only explanation is his

7

1  attorney's unelaborated denial: "I never received these documents from them."  Bolanos Reply
2  Decl. ¶ 2.  Because Lac moves for a preliminary injunction, he must show he is likely to succeed
3  on the merits of his claims or at least that serious questions surround his claims; it is not
4  Nationstar's burden to prove the opposite.  *See Shell Offshore, Inc.*, 709 F.3d at 1291.  Mr.
5  Bolanos's denial makes for neither a likelihood of success nor serious questions.  And although
6  Nationstar designated four people as Lac's single point of contact over 2014 and 2015, he has
7  cited no law that forbids this practice.  Rather, under California law, a "'single point of contact'
8  means an individual or team of personnel . . . ."  *See* Cal. Civ. Code § 2923.7(e).  Nationstar
9  provided names, addresses, and contact information for a short list of people Lac could contact to
10 address his concerns.  Lac has not shown he is likely to succeed on this claim, and he has not
11 raised serious questions.

12       Second, Lac's negligent misrepresentation claim rests on his allegation that the
13 Nationstar representative falsely claimed that Nationstar had diligently attempted to contact him
14 before filing a notice of default.  *See* Compl. ¶ 15.  By October 9, 2014, the date the declaration
15 was signed, the evidence here shows that more than two months had passed since Nationstar sent
16 Bolanos a packet of information about how Lac could apply for a loan modification, and neither
17 Lac nor Bolanos had responded.  Lac has not shown he is likely to succeed on this claim, and he
18 has not raised serious questions.

19       Third, the complaint's UCL allegations rely entirely on Lac's allegations that
20 Nationstar ignored Bolanos's letters and falsely represented its diligence in October 2014.  *See*
21 Compl. ¶ 18.  Because Lac has not shown any likelihood of success on these underlying claims,
22 his motion likewise falls short with respect to his UCL claim.

23       Finally, in Lac's moving papers and reply brief, he also alleges Nationstar has
24 attempted to conduct a foreclosure sale while his current application for a home loan modification
25 is pending.  *See* Mem. Prelim. Inj. at 7; Reply at 4.  His complaint does not include these
26 allegations; he cannot show any likelihood of success on a claim he has not advanced.  Neither
27 has he made the required "clear showing," *Winter*, 555 U.S. at 22, that his applications for loan
28 modifications were complete and pending when Nationstar scheduled foreclosure sales; he has

presented only an incomplete series of correspondence. In any event, no foreclosure sale is currently scheduled.

In summary, Lac has not shown he is likely to succeed on the merits of his claims, and his evidence raises no serious questions about his success. Any likelihood of irreparable harm, the balance of the equities, and the public interest are therefore of no consequence, *see Pimentel*, 670 F.3d at 1111, although Lac acknowledged at hearing that he has been living in his home for many years now without making any payments whatsoever, which also weighs against his motion for a preliminary injunction.

IV.     CONCLUSION

The motion for a preliminary injunction is DENIED.

This order resolves ECF No. 56.

The motions for attorneys' fees, for reconsideration, and to dismiss remain pending, *see* ECF Nos. 57, 62, 69, and will addressed in separate orders.

IT IS SO ORDERED.

DATED: June 1, 2016.

_____
UNITED STATES DISTRICT JUDGE