UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NELSON LAC, | No. 2:15-cv-00523-KJM-AC (TEMP) |
| Plaintiff, | |
| v. | ORDER |
| NATIONSTAR MORTGAGE LLC, et al., | |
| Defendants. | |

I.     BACKGROUND

Defendant Nationstar Mortgage LLC asks the court to reconsider its decision to award plaintiff Nelson Lac his attorneys' fees under California Civil Code section 2924.12. The court held a hearing on June 3, 2016. Aldon Bolanos appeared for Lac. Jered Ede and Timothy Burnett appeared for Nationstar. The motion is denied.[1]

In 2006, Nelson Lac obtained a mortgage loan. *See* Request for Judicial Notice Ex. L, ECF No. 67. In 2008, Lac's construction business closed, and he fell behind on his

---

[1] This court separately has ordered Mr. Bolanos to show cause why he should not be sanctioned for the unauthorized practice of law. *See* Order to Show Cause, ECF No. 98. Among other sanctions, Mr. Bolanos was ordered to show cause why the court should not vacate its order awarding attorneys' fees to Mr. Lac, the same order that is the subject of this motion for reconsideration. *See id.* at 4. In this order the court reviews only Nationstar's motion.

1

1  mortgage payments.  Lac Decl. ¶ 3, ECF No. 56-2.  Nationstar began servicing Lac's loan in July

2  2013 and is the loan's current servicer.  *See* Janati Decl. ¶¶ 2, 5, ECF No. 66-1.

3          Lac filed a complaint in this court on March 9, 2015.  ECF No. 1.  He alleged

4  Nationstar ignored several requests for a loan modification his attorney made in 2014.  *Id.* ¶¶ 3–6.

5  He also alleged Nationstar falsely claimed to have tried diligently to contact him before a notice

6  of default was recorded in December 2014.  *Id.* ¶ 7.  He requested damages, declaratory relief, an

7  equitable accounting, interest, attorneys' fees, and costs.  *Id.* at 7–8.

8          Nationstar did not timely file a responsive pleading, so in September of last year,

9  Lac moved for the entry of Nationstar's default, ECF No. 12, and applied *ex parte* for a

10  temporary restraining order, notifying the court a foreclosure sale had been scheduled for mid-

11  October.  TRO Appl. at 3, ECF No. 13.  The court set a hearing on the motion and instructed

12  Lac's attorney, Mr. Bolanos, to contact Nationstar and notify it of Lac's application and the

13  hearing.  ECF No. 15.  The docket reflects Bolanos complied with that order.  ECF No. 16.

14          In October 2015, Nationstar appeared in this action by filing a belated motion to

15  dismiss.  ECF No. 17.  A few days later, the court held a hearing on Lac's *ex parte* application.

16  Minutes, ECF No. 23.  Following a discussion with counsel, the court issued an order granting the

17  application for a temporary restraining order as unopposed and enjoining any foreclosure sale for

18  sixty days.  Order Oct. 14, 2015, ECF No. 24.  The court also struck Nationstar's untimely

19  motion to dismiss and instructed the Clerk's Office to enter Nationstar's default.  ECF No. 30.

20          Soon after his request for a TRO was granted, Lac requested an award of the

21  attorneys' fees he incurred in obtaining the temporary restraining order, citing California Civil

22  Code section 2924.12.  ECF No. 36.  At the time, as described above, Nationstar had not timely

23  appeared, and its default had not been set aside, so it filed no opposition.  The court awarded Lac

24  attorneys' fees of $6,660.  *See* Order at 6–8 (citing Cal. Civ. Code § 2924.12 and *Monterossa v.*

25  *Superior Court of Sacramento Cty.*, 237 Cal. App. 4th 747, 753, 757 (2015)), ECF No. 61.  In the

26  same order, the court set aside Nationstar's default.  *Id.* at 4–6.  Nationstar now moves for

27  reconsideration of the fee award.  ECF No. 69.  Lac opposes the motion.  ECF No. 79.

28

Nationstar's reply brief was filed late, four days before hearing, and is three pages longer than this court's standing order allows. *See* E.D. Cal. L.R. 230(d) ("Not less than seven (7) days preceding the date of hearing, the moving party may serve and file a reply to any opposition filed by a responding party."); Standing Order at 4, ECF No. 6-1 ("Replies shall not exceed ten (10) pages. Only in rare instances and for good cause shown will the court grant an application to extend these page limitations."). The reply brief is therefore stricken.

After Nationstar's motion to reconsider was filed, the court denied Lac's motion for a preliminary injunction, finding he was unlikely to succeed on the merits of his claims. ECF No. 86. The court also dismissed Lac's original complaint under Federal Rule of Civil Procedure 12(b)(6), allowing him leave to amend. ECF No. 94. Lac filed an amended complaint in June 2016. ECF No. 97. He now asserts five claims against Nationstar: (1) pursuing a foreclosure sale while considering his application for a loan modification in violation of California Civil Code section 2923.6; (2) providing him no single point of contact in violation of California Civil Code section 2923.7; (3) not acknowledging receipt of his loan modification application in violation of California Civil Code section 2924.10; (4) negligently mishandling his modification application; and (5) engaging in unfair business practices in violation of California Business and Professions Code section 17200.

II.     LEGAL STANDARD

Nationstar asks this court to reconsider its previous order awarding attorneys' fees. "As long as a district court has jurisdiction over [a] case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *City of Los Angeles v. Santa Monica BayKeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (citation, quotation marks, and emphasis omitted). In addition, Rule 54(b) of the Federal Rules of Civil Procedure authorizes courts to revise "any order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b).

3

1           Reconsideration is appropriate where it is necessary to correct clear error or
2    prevent manifest injustice, where new evidence has become available, or where there has been an
3    intervening change in controlling law. *Cachil Dehe Band of Wintun Indians v. California*,
4    649 F. Supp. 2d 1063, 1069 (E.D. Cal. 2009) (citing *Sch. Dist. No. 1J Multnomah Cty. v. AC&S
5    Inc*., 5 F.3d 1255, 1263 (9th Cir. 1993)). Under Local Rule 230(j), the party moving for
6    reconsideration must explain:

> (1) when and to what [j]udge . . . the prior motion was made;
> (2) what ruling . . . was made thereon; (3) what new or different
> facts or circumstances are claimed to exist which did not exist or
> were not shown upon such prior motion, or what other grounds
> exist for the motion; and (4) why the facts or circumstances were
> not shown at the time of the prior motion.

11   E.D. Cal. L.R. 230(j). "To succeed, a party must set forth facts or law of a strongly convincing
12   nature to induce the court to reverse its prior decision." *Knight v. Rios*, No. 09-00823, 2010 WL
13   5200906, at *2 (E.D. Cal. Dec. 15, 2010).

14   III.    DISCUSSION

15           Nationstar argues this court's previous order was clearly erroneous because
16   California law allows attorneys' fee awards if a plaintiff obtains a preliminary injunction, but not
17   if she obtains only a temporary restraining order. Mot. Recons. at 5–9. Its motion may be denied
18   on a straightforward reading of this court's October 2015 order. The injunction this court entered
19   was not purely a temporary restraining order, as it remained in effect for longer than twenty-eight
20   days and was issued after Nationstar's counsel raised no opposition at hearing. *See* Order Oct.
21   14, 2015, ECF No. 24; Fed. R. Civ. P. 65(b) (imposing a fourteen-day limit on temporary
22   restraining orders; allowing an extension to twenty-eight days for good cause). The court
23   "grant[ed] the motion for a temporary restraining order and construe[d] the parties' agreements at
24   hearing as a stipulation to entry of a sixty-day preliminary injunction." Order Oct. 14, 2015 at 1.
25   The court's order clearly awarded Lac not only a temporary restraining order, but preliminary
26   injunctive relief. Nationstar did not object to that order until the hearing on its motion to
27   reconsider, where it was represented by different attorneys. Because Nationstar's motion rests
28

principally on the distinctions it draws between temporary restraining orders and preliminary injunctions, there is no reason to reconsider.

Nationstar's substantive arguments would not lead to another conclusion.  The court addresses them here in the interest of completeness and clarity.

A.  Statutory Interpretation

The statute in question is California law.  *See* Order Mar. 28, 2016, at 6.  This court therefore interprets it as a California court would in the same situation, *see Kairy v. SuperShuttle Int'l*, 660 F.3d 1146, 1150 (9th Cir. 2011), applying California's rules of statutory interpretation, *see In re First T.D. & Inv., Inc.*, 253 F.3d 520, 527 (9th Cir. 2001).

Under California law, when construing a statute, courts "begin with the plain language of the statute, affording the words of the provision their ordinary and usual meaning and viewing them in the statutory context, because the language . . . generally is the most reliable indicator of legislative intent." *Fluor Corp. v. Superior Court*, 61 Cal. 4th 1175, 1198 (2015) (citation and quotation marks omitted).  If the words are unambiguous, no further analysis is necessary.  *Id.*  A statute means what it says.

If the statute's language is unclear, the court "next consider[s] the context in which these words appear, attempting to harmonize the words of the statute within the overall statutory scheme." *People v. Valladoli*, 13 Cal. 4th 590, 599 (1996).  A court may also consider a statute's legislative history: "Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent." *Dyna-Med, Inc. v. Fair Empt. & Hous. Comm'n*, 43 Cal. 3d 1379, 1387 (1987); *accord Fluor Corp.*, 61 Cal. 4th at 1198 ("If, however, the statutory language may reasonably be given more than one interpretation, courts may consider various extrinsic aids, including the purpose of the statute, the evils to be remedied, the legislative history, public policy, and the statutory scheme encompassing the statute." (citations and quotation marks omitted)).

Here, the text of section 2924.12 does not discriminate between preliminary injunctions and temporary restraining orders.  That section provides, "A court may award a prevailing borrower reasonable attorney's fees and costs . . . .  A borrower shall be deemed to

have prevailed for purposes of this subdivision if the borrower obtained injunctive relief . . . ." Cal. Civ. Code § 2924.12(i). Nationstar's argument is not persuasive. Its interpretation essentially reads "injunctive relief" to mean "any injunction except a temporary restraining order."

The statute's context and legislative history support the court's conclusion. *See* Req. J. Not., Tr. Cal. Sen. Floor Sess. (S.B. 900), ECF No. 80-1.[2] The Senate floor session transcript describes the principles that guided deliberations, providing the court with clues as to the purpose of the statute and evil to be remedied. *See id.* at 6. In the midst of the California foreclosure crisis, Senator Noreen Evans argued that, when lenders or servicers break the law, "the only remedy that is available to a borrower, prior to the foreclosure sale, is injunctive relief." *Id.* at 8. Senators considered whether section 2924.12 should cover "any injunction" or whether it should narrow coverage by specifying one or two types of injunctive relief. *Id.* at 15–17. The Senate did not eventually narrow the statute's coverage, as is evident in its enacted language. In addition, Senator Darrell Steinberg's argument is particularly relevant here:

> [Those who drafted the statute recognized that] if you are a homeowner who is about to lose their home unfairly and you were under a great amount of stress and you're trying to work with the company to try to avoid the dual tracking to ensure that the loan modification is finished so that you can stay in your home. If all that breaks down, the only way you're ever going to remedy that situation is to have an attorney. Yes, an attorney. Who is willing to go into court on your behalf and make sure that you can stay in your home. Now why is it that the granting of a temporary restraining order or preliminary injunction grants that attorney fees? Because here's the way this will work, when a temporary restraining order or preliminary injunction is granted, their servicer will then have an opportunity to cure and if they cure, which I hope they would do after the issuance of a temporary restraining order, the attorney fees will be cut off. There will be no more litigation. But the attorney should be compensated for what it took to cajole, to urge, to make the servicer cure the problem in the first place.

*Id.* at 31.

---

[2] The court grants Lac's request for judicial notice. "Legislative history is properly a subject of judicial notice." *Anderson v. Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012). The court also overrules Nationstar's associated evidentiary objections. Although Nationstar argues Lac's exhibit is inauthentic, it does not suggest that Lac's exhibit misquotes the actual legislative history, and nothing about the exhibit suggests its contents are inaccurate.

1    This language is also consistent with the relevant conference report, which refers
2 generally to injunctions and injunctive relief. *See* Sen. R. Comm. Conf. Rep. No. 1, S.B. 900,
3 at 33 (June 27, 2012). The same report explains the legislators' understanding that a lender or
4 servicer would have an opportunity to correct its errors, but that the law would nonetheless allow
5 an award of attorneys' fees. *See id.* ("[T]he servicer or other covered entity may avoid legal
6 action by curing the violation any time prior to the recordation of a trustee's deed. . . . If it is
7 necessary to order injunctive relief, a party who obtains an injunction is among those who is
8 recognized as a prevailing party for purposes of attorneys' fees and costs."). This logic applies
9 just as well to temporary restraining orders as preliminary injunctions.

10    Lac's application for a temporary restraining order appears to have functioned as
11 intended, delaying a foreclosure sale and encouraging Nationstar to respond to Lac's plea and to
12 the court's directives. Nationstar did not even appear in this lawsuit until after Lac requested
13 injunctive relief. When Nationstar did appear, it agreed to consider Lac's application, and it
14 agreed to an injunction. Nationstar can now correct any oversights it made, and Lac may be
15 awarded the reasonable attorneys' fees he incurred in the process.

16    Finally, although Nationstar notes that no California courts have interpreted
17 section 2924.12 to include temporary restraining orders, Mot. Recons. at 6, the absence of
18 decisional law does not overcome the plain language of a statute, supported by its legislative
19 history.

20    B.    Whether *Monterossa v. Superior Court* is Binding

21    In *Monterossa v. Superior Court*, the California Court of Appeal held that a
22 borrower is a "prevailing borrower" under section 2924.12(i) even if he or she does not obtain
23 permanent injunctive relief. 237 Cal. App. 4th at 753–57. At hearing, Nationstar urged this court
24 not to follow *Monterossa*, which it argued was wrongly decided.

25    Where, as here, a federal court applies California law to a question addressed in no
26 California Supreme Court decision, the federal court must follow any germane decision of the
27 California Court of Appeal. *Ryman v. Sears, Roebuck & Co.*, 505 F.3d 993, 994 (9th Cir. 2007).
28 Only if the federal court finds "convincing evidence" that the California Supreme Court would

1  not follow the lower court's decision may the federal court part ways with that lower state court.
2  *Id.* "Convincing evidence" includes "intermediate appellate court decisions, decisions from other
3  jurisdictions, statutes, treatises, and restatements." *Eichacker v. Paul Revere Life Ins. Co.*, 354
4  F.3d 1142, 1145 (9th Cir. 2004) (citation and quotation marks omitted); *accord Lewis v. Tel.*
5  *Emps. Credit Union*, 87 F.3d 1537, 1545 (9th Cir. 1996).  A federal court's disagreement with the
6  state court's decision—or even a series of disapproving federal district court decisions—does not
7  alone create the necessary "convincing evidence." *See Ryman*, 505 F.3d at 995 & n.1.

8  To see how this rule works in practice, consider the Ninth Circuit's unpublished
9  decision in *Hunt v. U.S. Bank N.A.*, 593 F. App'x 730 (9th Cir. 2015).  In *Hunt*, the plaintiffs
10 appealed the district court's order dismissing their complaint and denying leave to amend.  *Id.*
11 at 731.  On appeal, they relied solely on the California Court of Appeal's decision in *Glaski v.*
12 *Bank of America*, 218 Cal. App. 4th 1079 (2013).  In *Glaski*, the Court of Appeal held that a
13 borrower had standing to attack an allegedly void assignment even though the borrower was not a
14 party to the assignment.  *See id.* at 1094–95.  In decisions both before and after *Glaski*, however,
15 several other courts disagreed, including other districts of the California Court of Appeal.  *See,*
16 *e.g.*, *Bowen v. Bank of N.Y. Mellon*, No. D064927, 2014 WL 6673272, at *4 (Cal. Ct. App. Nov.
17 25, 2014) (unpublished); *Jenkins v. JP Morgan Chase Bank, N.A.*, 216 Cal. App. 4th 497, 515
18 (2013).  The *Hunt* court therefore affirmed the district court's decision not to follow *Glaski*.  *See*
19 593 F. App'x at 731 (citing *Ryman*, 505 F.3d at 994).

20 *Hunt* and *Glaski* are helpful for another reason: they illustrate the difficulty of
21 predicting developments in state law and the peril of disregarding state authority.  After *Hunt* was
22 decided, a portion of the *Glaski* conflict came before the California Supreme Court in *Yvanova v.*
23 *New Century Mortgage Corp.*, 62 Cal. 4th 919 (2016).[3]  The Court of Appeal had decided the
24 plaintiff in *Yvanova* lacked standing to pursue a wrongful foreclosure claim based on an allegedly
25 void assignment.  226 Cal. App. 4th 495, 502 (2014), *rev'd*, 62 Cal. 4th 919.  It rejected the rule

---

[3] The *Hunt* panel acknowledged the pending review in *Yvanova*, but distinguished that case and others.  *See* 593 F. App'x at 731 n.1.

8

of *Glaski*. *Id.* The California Supreme Court reversed, after considering *Glaski* and contrary decisions at length, and drawing careful distinctions between void and voidable assignments. *See* 62 Cal. 4th 929–42. It adopted an adaptation of the *Glaski* court's position: "a borrower who has suffered a nonjudicial foreclosure does not lack standing to sue for wrongful foreclosure based on an allegedly void assignment merely because he or she was in default on the loan and was not a party to the challenged assignment," but clarified that it did not mean "a borrower may attempt to preempt a threatened nonjudicial foreclosure by a suit questioning the foreclosing party's right to proceed." *Id.* at 924.

Nationstar argues that because no permanent injunction was awarded in *Monterossa*, that court wrongly allowed attorneys' fees. It points out that section 2924.12(i) allows an award of attorneys' fees "in an action," not "after a motion." This argument is far from "convincing evidence." No other court has called the reasoning of *Monterossa* into question. Moreover the Court of Appeal's reasoning is persuasive. First, "[t]he statute at issue refers to 'injunctive relief,' which plainly incorporates both preliminary and permanent injunctive relief." 237 Cal. App. 4th at 753. Second, as a practical matter, "in many cases the best a plaintiff can hope to achieve is a preliminary injunction." *Id.* at 754. More specifically, when a plaintiff shows a violation has likely occurred, the defendant can correct the violation and move to dissolve the preliminary injunction. *Id.* Although the defendant's compliance essentially moots the borrower's claims, the borrower would nonetheless have obtained the defendant's compliance, and the statute will have served its purpose. *Id.* And third, the *Monterossa* court's interpretation matches the law's larger purpose: ensuring that lenders and borrowers have a fair opportunity to explore alternatives to foreclosure. *See id.* at 755 (citing Cal. Civ. Code § 2923.4(a)).

        C.        <u>Interpreting *Monterossa*</u>

Nationstar also argues that because the *Monterossa* court did not specifically consider a temporary restraining order, its decision cannot apply here. Its argument, as noted above, turns on distinctions between temporary restraining orders and preliminary injunctions. First, it points out that a temporary restraining order, but not a preliminary injunction, may be

issued *ex parte* and without notice. *See* Mot. Recons. at 7 (citing Cal. Civ. Proc. Code § 527(c); California Rules of Court 3.1203(a); and *Pac. Decision Sciences Corp. v. Superior Court*, 121 Cal. App. 4th 1100, 1110 (2004)). Second, a temporary restraining order does not require a full evidentiary hearing giving each party the opportunity to present arguments and evidence. *See id.* (citing Cal. Civ. Proc. Code § 527). Third, a temporary restraining order does not require a plaintiff to post bond to protect the interests of the defendant pending final resolution of the case. *See id.* at 7–8 (citing Cal. Civ. Proc. Code § 529). Finally, a temporary restraining order terminates automatically when a preliminary injunction is granted or denied. *Id.* at 8 (citing *Landmark Holding Grp. v. Superior Court*, 193 Cal. App. 3d 525, 529 (1987)). Nationstar also describes the distinctions the Federal Rules of Civil Procedure draw between preliminary injunctions and temporary restraining orders. *See id.* Specifically, the Federal Rules separate the two remedies into two separate subsections of Rule 65, and notice requirements are less strict when it comes to temporary restraining orders. *Compare, e.g.*, Fed. R. Civ. P. 65(a)(1) ("The court may issue a preliminary injunction only on notice to the adverse party."), *with, e.g.*, Fed. R. Civ. P. 65(b)(1) ("The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney [in certain circumstances].").

Although these distinctions are cognizable, the California legislature did not enact them into section 2924.12(i). In any event, just as some policy concerns favor Nationstar's interpretation, others favor Lac's. Temporary restraining orders may be granted *ex parte*, but they are often obtained in emergency situations at the very beginning of a case, where attorneys' fees are small. Additionally, in federal court, the same legal standard applies to both preliminary injunctions and temporary restraining orders. *See Stuhlbarg Int'l. Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001), *overruled on other grounds*, *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008). In both instances the plaintiff must show he "is likely to succeed on the merits, . . . likely to suffer irreparable harm in the absence of preliminary relief, . . . the balance of equities tips in his favor, and . . . an injunction is in the public interest." *Winter*, 555 U.S. at 20.

It is true the injunctive relief in question in *Monterossa* was a preliminary injunction, but the Court of Appeal's decision drew more broadly on its interpretation of the Homeowner Bill of Rights' text and its legislative history. 237 Cal. App. 4th at 753–54. The legislature's mission was to expand borrowers' preforeclosure options and to prevent unfair foreclosures. *See id.* at 752. Section 2924.12 may therefore be interpreted to encourage compliance by allowing reasonable attorneys' fees in actions that promote compliance and cooperation between lenders and borrowers. *Id.* Both section 2924.12 and the *Monterossa* court refer broadly to an "injunction" or "any injunction," not to "any injunctive relief except for temporary injunctions." *Id.* at 753.

In addition, as summarized above, the *Monterossa* court reasoned that homeowners facing foreclosure often have no remedy aside from a short-term injunction. *Id.* at 755. Its discussion of a preliminary injunction as "victory" applies just as well to temporary restraining orders: like a preliminary injunction that dissolves before the lawsuit's conclusion, a temporary restraining order may allow lenders to fix problems. In many instances, especially when timelines are short, a temporary restraining order is akin to a nascent preliminary injunction. This case is an example. Before Nationstar moved for reconsideration, the parties agreed to a preliminary injunction. ECF No. 24.

D.     Awarding Attorneys' Fees as a Discretionary Matter

Finally, Nationstar suggests that because an application for a temporary restraining order may be granted *ex parte*, an award of attorneys' fees might implicate its federal constitutional rights.[4] A reasonable interpretation of section 2924.12(i) allows the court to avoid any constitutional problems. *Cf. Clark v. Martinez*, 543 U.S. 371, 381 (2005) (a statutory interpretation that implicates no constitutional questions is preferred over an interpretation that creates a conflict). The award of attorneys' fees under section 2924.12 is discretionary; that section uses the verb "may," not "must" or "shall." Cal. Civ. Code § 2924.12(i). By permitting

---

[4] Nationstar develops this argument further in its stricken reply brief. *See* Reply at 9–12. Its arguments in that brief, if considered here, would not lead the court to a different conclusion.

11

rather than requiring a court to award attorneys' fees, section 2924.12 allows courts to avoid awards that would be inequitable or unconstitutional.

The court declines here to reconsider its discretionary decision to award attorneys' fees. The injunction granted in this case encouraged Nationstar's active involvement.

IV.     <u>CONCLUSION</u>

Nationstar's reply brief, ECF No. 82, is STRICKEN.

The motion for reconsideration, ECF No. 69, is DENIED.

IT IS SO ORDERED.

DATED: July 26, 2016.

_____
UNITED STATES DISTRICT JUDGE